## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| JONATHAN DIAMOND, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD SECURITIES, LLC, ROBINHOOD MARKETS, INC. and JOHN DOES 1-10,<br><br>Defendant. | **DEMAND FOR JURY TRIAL**<br><br> **CLASS ACTION**<br><br>Case No. |

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of himself and all others similarly situated, hereby bring

this class action against Defendants Robinhood Financial, LLC ("Robinhood

Financial"), Robinhood Securities, LLC ("Robinhood Securities"), Robinhood

Markets, Inc. ("Robinhood Markets") (collectively, "Robinhood" or "Robinhood

Defendants"), and Defendants John Does 1-10 ("John Doe Defendants") based upon

information belief, and investigation of counsel, and hereby allege as follows:

## INTRODUCTION

1.      Robinhood declares front and center on its website, "We're on a

mission to democratize finance for all."[1] "At Robinhood, we believe the financial

---

[1] https://robinhood.com/us/en/about-us/

system should be built to work for everyone. That's why we create products that let you start investing at your own pace, own your own terms."[2] This cannot be farther from the truth. On January 28, 2021, Robinhood took action that was not only illegal, but which also created the most substantial detriment to small investors in the history of the digital investing world.  Defendants manipulated the stock market through (a) picking and choosing which stocks its users could buy and sell, (b) limiting users to only selling certain stocks, with no opportunity to buy declining share prices, and (c) selling its users stocks without their authority. This simple class action seeks damages for the losses of Robinhood's users and seeks to enjoin Robinhood's practices.

2.      Robinhood is an online brokerage firm founded in 2013 that states it is a "pioneer in commission-free investing." Robinhood's customers can place securities trades through the firm's website and by using a web-based application (or "app"). Robinhood picks and chooses which securities its customers can buy and sell, including option contracts, and engage in trading on margin. The company possesses no storefront offices and operates entirely online. Robinhood is a Financial Industry Regulatory Authority ("FINRA") - regulated broker-dealer.

3.      On January 28, 2021, Robinhood, halted the purchase of stocks for 13 publicly traded companies including GameStop, Blackberry, Nokia, AMC, and

---

[2] https://robinhood.com/us/en/about-us/

others. This unilateral move was done so in a concerted effort to de-platform and deprive individual investors of the ability to control their own investments for the benefit of itself and others.

4.      This entire sequence of events started when an investment management fund, "Melvin Capital Management" ("Melvin" who held over $12.5 Billion in assets placed an aggressive short sell on the company GameStop. To contradict this decision, the heavily followed Reddit page "r/wallstreetbets" and their administrators advocated that their followers purchase GameStop stock using the broker Robinhood. The response of the individual investors motivated by this and other factors was so effective that it drove the stock price to over 400% of its previous value.  As a result, Melvin lost billions on their return and Robinhood chose to block users from buying GameStop stock but still allowed liquidation.

5.      Melvin has large investments from Citadel, LLC which, according to a Bloomberg Report, gives Robinhood roughly 40% of their revenue.[3] Given Citadel's financial relationship with Robinhood, the actions taken were motivated by anti-competitive reasons, not for concerns of volatility claimed by Robinhood. Robinhood's behavior was nothing more than a blatant conflict of interest and obvious monopolistic activity.

_____

[3] https://www.bloomberg.com/news/articles/2018-10-15/robinhood-gets-almost-half-its-revenue-in-controversial-bargain-with-high-speed-traders

6.      United States Congressional leaders from both major parties criticized Robinhood for its actions. Lawmakers of the House Financial Services Committee and the Senate Banking Committee publicly declared that they will hold hearings as a result of Robinhood's actions. It is clear something is wrong when both Representative Alexandria Ocasio-Cortez and Donald Trump Jr. agree on something- that being the collusions to protect Wall Street profiteers.[4]

7.      United States Rep. Ro Khanna summed it up perfectly, "While retail trading in some cases, like on Robinhood, blocked the purchasing of GameStop, hedge funds were still allowed to trade the stock."[5] "Instead of investing in future technologies to help America win the 21st Century, Wall Street poured billions into shorting this stock to crush this company and put workers out of business."[6]

8.      United States Representative, Rashida Tlaid, a member of the Financial Services Committee, went further calling Robinhood's move "beyond absurd" and demanding a hearing on "Robinhood's market manipulation."[7] "They're blocking the ability to trade to protect Wall Street hedge funds, stealing millions of dollars from their users to protect people who've used the stock market as a casino for

---

[4] https://www.tweaktown.com/news/77592/donald-trump-jr-and-aoc-agree-on-one-thing-robinhood-is-screwed/index.html
[5] https://www.cnbc.com/2021/01/28/gamestop-cruz-ocasio-cortez-blast-robinhood-over-trade-freeze.html
[6] https://www.cnbc.com/2021/01/28/gamestop-cruz-ocasio-cortez-blast-robinhood-over-trade-freeze.html
[7] https://www.cnbc.com/2021/01/28/gamestop-cruz-ocasio-cortez-blast-robinhood-over-trade-freeze.html

decades."[8]

9.     Essentially, Wall Street hedge funds got beat in their own game by a group of internet message board day traders, and suffered significant losses. For example, Melvin need Citadel and Point 72 to inject almost $3 billion into the ailing hedge fund.[9] Steve Cohen's hedge fund Point72 lost nearly 15% this year as a result of GameStop.[10] Citron Research's Andrew Left closed most of the firm's short position when GameStop traded at $90 at a loss of 100%.[11]

10.     Hedge funds were permitted to make bets against GameStop, and other companies, to fail (short-selling), but got upset when consumers began purchasing GameStop shares and other stocks that were heavily short sold.

11.     Suspiciously, when the price of GameStop, AMC, American Airlines, Nokia, and other shares began to rise on the morning of January 28, 2021, Robinhood users were not permitted to purchase any more shares of GameStop, AMC, or Nokia. For example, GameStop was around $469 a share at 10:00 a.m. and as a result of Robinhood prohibiting the buying of any GameStop shares, the price plummeted to $112 by 11:20 a.m. because the only trade Robinhood permitted its users to make

---

[8] https://www.cnbc.com/2021/01/28/gamestop-cruz-ocasio-cortez-blast-robinhood-over-trade-freeze.html
[9] https://markets.businessinsider.com/news/stocks/hedge-funds-torched-wall-street-bets-gamestop-short-squeeze-reddit-2021-1-1030016596
[10] https://markets.businessinsider.com/news/stocks/hedge-funds-torched-wall-street-bets-gamestop-short-squeeze-reddit-2021-1-1030016596
[11] https://markets.businessinsider.com/news/stocks/hedge-funds-torched-wall-street-bets-gamestop-short-squeeze-reddit-2021-1-1030016596

was to sell GameStop, which caused a panic and a mass selloff driving the price into the ground. This is what the Hedge Funds wanted. When everyone is only selling, the price cannot go up because no one can buy the shares.

12. Robinhood's users lost hundreds of millions of dollars as a result of Robinhood's stock market manipulation.

13. By virtue of this class action, Plaintiff seeks to enjoin Robinhood's anticompetitive, unlawful, and unfair practices and to require Robinhood to compensate Plaintiff and members of the Class for the losses they have incurred. Plaintiff also seeks attorneys' fees, costs, and expenses.

## PARTIES

14. Plaintiff Jonathan Diamond is an individual, over 18 years of age, who is a Robinhood user. At all times relevant herein, Plaintiff was, and currently is, a resident and citizen of the State of California.

15. Defendant Robinhood Financial is a Delaware corporation with its principal place of busines at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets. Robinhood Financial is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities.

16. Defendant Robinhood Securities is a Delaware corporation with its

principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly-owned subsidiary of Defendant Robinhood Markets.

17. Defendant Robinhood Markets is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets is the corporate parent of Defendants Robinhood Financial and Robinhood Securities.

18. Defendants John Does 1-10 are hedge funds who possess business relationships with Robinhood.

19. Plaintiff, the members of the Class, John Does 1-10, and Robinhood are a "person" or "persons," within the meaning of Section 17201 of the California Unfair Competition Law ("UCL").

## **JURISDICTION AND VENUE**

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d), because the amount in controversy for the Classes exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Class members defined below and minimal diversity exists because the majority of putative Class members are citizens of a state different than Defendants.

21. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and Robinhood Securities principal place of

business is in this District. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because Robinhood Securities is headquartered in Lake Mary and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

22.    This Court has personal jurisdiction over Robinhood because it is headquartered in and authorized to do business and does conduct business in Florida, and because it has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its business within this state to render the exercise of jurisdiction by this Court permissible.

## FACTUAL ALLEGATIONS

### A.    Robinhood's Business Model

23.    Robinhood was founded in 2013 by Vlad Tenev and Baiju Bhatt.

24.    Robinhood offers people the ability to invest in stocks, ETFs, and options through an electronic trading platform, both online and through an app.

25.    Robinhood competes with other online and traditional brokerages by not charging trading fees. At the time of its founding, most brokerage firms charged about $10 or more to make a trade. Robinhood also competes with traditional financial institutions by offering more user friendly digital services, which has made Robinhood very popular, especially with younger traders. In July of 2020, Robinhood said it had over 13 million users on its platform. In August 2020, after

raising $200 million in Series G funding, Robinhood was valued at $11.2 billion.[12]

26.    Robinhood's original product was commission-free trades of stocks and exchange-traded funds. As Robinhood grew, it added more risky and complex products—like options and margin trading. Those products, combined with Robinhood's game-like interface, have been a hit with millennials, and its typical customer is 31 years old on average.[13]

27.    Robinhood's trading app is designed to be easy to use. For example, on the Robinhood home screen, there is a list of popular stocks that users can "trade" with just the touch of the screen, which skips many of the steps that other firms require.

28.    Robinhood also includes many features that make investing appear more like a game. New members are given a free share of stock when they join Robinhood—to reveal the stock users scratch-off images that look like a lottery ticket. Once the stock is revealed, confetti appears to fall from the top of the screen.

29.    One of Robinhood's popular features is the ability for users to engage in options trading. Robinhood describes its options trading as "quick,

---

[12] Kate Rooney, Robinhood snags third mega-investment of the year, boosting valuation to $11.2 billion, CNBC (August 17, 2020) https://www.cnbc.com/2020/08/17/robinhood-announcesanother-mega-round-valuation-soars-to-11point2b.html

[13] Graham Rapier, Robinhood had to install protective glass after frustrated traders kept showing up at its office, Business Insider (July 10, 2020) https://www.businessinsider.com/robinhoodoffice-installed-bulletproof-glass-after-frustrated-traders-visited-report-2020-7

straightforward & free." To start trading options, users respond to multiple-choice questions. "Beginners are legally barred from trading options, but those who click that they have no investing experience are coached by the app on how to change the answer to 'not much' experience. Then people can immediately begin option trading."

30.     Robinhood's users trade more often than average, faster, and with more risk than traders who use other platforms. According to an analysis of new filings from nine brokerage firms by the research firm Alphacution for The New York Times, in the first quarter of 2020, Robinhood users traded nine times as many shares as E-Trade customers and 40 times as many shares as Charles Schwab customers.[14]

**B.     Robinhood's Services**

31.     When a user opens an account with Robinhood, they enter into a Customer Agreement with "Robinhood Financial LLC, Robinhood Securities, LLC and their agents and assigns." In 2020, Robinhood revised the Customer Agreement on February 5, April 28, June 22, and December 30.

32.     Robinhood's app and website does not provide reasonable notice to the terms and conditions governing the relationship between Robinhood and its

---

[14] Nathaniel Popper, Robinhood Has Lured Young Traders, Sometimes With Devastating Results, The New York Times (July 8, 2020) https://www.nytimes.com/2020/07/08/technology/robinhood-riskytrading.html?searchResultPosition=2

customers.

33.     All of Robinhood's customers register on the app or Robinhood's website on the internet. Reasonable Robinhood customers may not understand that by simply signing up for an app or website for future securities trading that they have entered into a contractual relationship.

34.     In sum, the interface on Robinhood's app and website did not reasonably focus Robinhood's customers on the terms and conditions located in the Customer Service Agreement, and customers could not reasonably have assented to those terms and conditions, particularly given the nature of the online transaction and the broad scope of the terms and conditions.

35.     Based upon information and belief, the notice of terms and conditions in Robinhood's Customer Service Agreement did not require the user to scroll through the conditions or even select them. The user could fully register for Robinhood's service without ever clinking the link to the terms and conditions.

36.     Robinhood is aware, most of those registering via mobile apps do not read the terms of use or terms of service included with the applications. Yet, the design of Robinhood's app and online registration enables, if not encourages, users to ignore the terms and conditions.

37.     It is not obvious that signing up via an app or Robinhood's website for securities trading services that it would be accompanied by the type of extensive

terms and conditions present in Robinhood's Customer Agreement, which constantly changes. Customers never assented to each new term added in each revised Customer Agreement.

38. In sum, a Robinhood customer may reasonably believe he or she is simply signing up for a service without understanding that he or she is entering into a significant contractual relationship governed by wide-ranging terms of use. Instead of requiring its users to review those terms and conditions as it appears to do with its drivers, Robinhood has designed an interface that allows the registration to be completed without reviewing or even acknowledging the terms and conditions.

### C.   How Robinhood Makes Money

39. Robinhood offers a paid subscription product called "Gold." Users who purchase Gold memberships pay $5 a month to have faster deposit processing, access to professional research, the ability to see additional information about stock prices, and the ability to invest on margin.

40. Robinhood also makes money from "payment for order flow" fees. In fact, payment for order flow fees are reportedly Robinhood's primary revenue stream—greatly exceeding what it earns from Robinhood Gold, or from the interest it makes on cash balances in customer accounts, which is another source of Robinhood's revenue.

41. Payment for order flow fees are paid to Robinhood from electronic

market makers for passing on customer orders. For example, if a Robinhood users purchase a share of Apple - through their account, Robinhood sends that order to a large market maker like Citadel Securities and receives a few pennies in return—i.e., the "payment for order flow" fees. Citadel, meanwhile completes the trade and makes a few pennies itself.[15]

42.     For Robinhood, those fees add up. According to a recent SEC filing, Citadel Securities and several other firms paid Robinhood nearly $100 million in the first quarter of 2020.[16] In the second quarter of 2020, Robinhood made $180 million off trades, roughly double from the prior quarter.[17]

**D.     Robinhood's Marketing to Customers**

43.     Robinhood's website markets, "our 6 commitments to you. We want you to feel confident and secure on Robinhood, so these are the commitments you can always expect from us. No commission fees, extra protection, high security standards, dedicated support, transparency, and quality execution."[18]

---

[15] Jeff John Roberts, David Z. Morris, Robinhood makes millions selling your stock trades … is that so wrong?, Fortune (July 8, 2020), https://fortune.com/2020/07/08/robinhood-makesmillions-selling-your-stock-trades-is-that-so-wrong/ (
[16] Jeff John Roberts, David Z. Morris, Robinhood makes millions selling your stock trades … is that so wrong?, Fortune (July 8, 2020), https://fortune.com/2020/07/08/robinhood-makesmillions-selling-your-stock-trades-is-that-so-wrong/
[17] Kate Rooney, Maggie Fitzgerald, Here's how Robinhood is raking in record cash on customer trades — despite making it free, CNBC (August 13, 2020), https://www.cnbc.com/2020/08/13/how-robinhood-makes-money-on-customer-tradesdespite-making-it-free.html?__source=iosappshare%7Ccom.apple.UIKit.activity.Mail
[18] https://robinhood.com/us/en/our-commitments/

44.     Robinhood's website further boasts, "we believe that everyone should have equal access to financial tools. Regardless of how much money you intend to invest, you will not be charged account minimums or commissions to buy or sell stocks, ETFs, or options on Robinhood."[19]

45.     Robinhood also warrants that, "We will cover 100% of direct losses due to unauthorized activity in your accounts."[20] And that Robinhood possesses "a transparent business model" because "we primarily make money from rebates from market makers, Robinhood Gold, stock loan, income from cash, and our Cash Management brokerage feature.[21]

46.     Robinhood also declares that, "We're committed to seeking a quality execution for every securities order. We perform regular and rigorous reviews of the execution quality you receive from our securities market makers, including the execution price, speed, and price improvement. While there is no specific formula to determine execution quality, we don't consider our own revenue when selecting which of our partners will execute your orders. The execution quality of your securities orders is regularly reviewed and analyzed by our Best Execution Committee, and we use a widely-used independent provider of best execution analytics software to review our execution quality. To ensure we have a fair system,

---

[19] https://robinhood.com/us/en/our-commitments/
[20] https://robinhood.com/us/en/our-commitments/
[21] https://robinhood.com/us/en/our-commitments/

all market makers we partner with pay us rebates at the same rate."[22]

47. In further marketing efforts, Robinhood boasts, "Every investor has a story to tell. See how Robinhood has changed the way people see their finances—and themselves."[23]

48. For example, Robinhood cites "Charles, 32 'I'm able to make financial decisions that grow my money and to help me buy a home.'" "Jenna, 22, 'In a male-dominated world, it's really important for women to invest. I feel good when I can chime in—it gives me a confidence boost." "Kathyria, 33, 'For once, I feel like I'm in control of my earnings—and I'm in control of the decisions I make."[24]

**E. Timeline of Events**

49. On January 14, 2021, the battle between GameStop short sellers and WSB users begins in earnest, as purchases by both sides send GameStop stock surging by 27 percent in one day. CNBC's Jim Cramer credits "open plotting" by Reddit users and is awed: "It's incredible to watch. I think they're succeeding beyond their wildest dreams."[25]

50. January 19, 2021, Citron Research, a short-selling investment firm, tweets that GameStop buyers are "the suckers at this poker game," a comment

---

[22] https://robinhood.com/us/en/our-commitments/
[23] https://robinhood.com/us/en/our-customers/
[24] https://robinhood.com/us/en/our-customers/
[25] https://www.nbcnews.com/tech/tech-news/robinhood-reddit-timeline-two-apps-tormenting-wall-street-n1256080

that only seems to encourage WSB users even more. Citron later calls Reddit users "an angry mob" and vows to quit commenting publicly about GameStop.

51.     January 22, 2021, GameStop trading becomes so volatile that it is halted at least four times; its stock surges by 51 percent in a day and closes at a then-record. WallStreetsBets users celebrate and vow more, with one user writing, "GUYS PLEASE HOLD< I GOT TO PAY OF MY STUDENT LOANNS."[26]

52.     January 25, 2021, GameStop shares surge again, and the short-squeeze fight enters another week.

53.     January 28, 2021, GameStop, AMC, BlackBerry, and Nokia shares soar. Robinhood prevents its customers from purchasing these stocks plus others, for a total of 13 stocks that Robinhood only permitted its users to sell, and not buy.

54.     When Robinhood's customers were only faced with the option to sell, the prices of GameStop, AMC, BlackBerry, Nokia, and others plummeted.

**F.     Melvin Capital Management's Short Position in GameStop**

55.     Melvin Capital Management is a hedge fund. It took the gamble to bet heavily against GameStop. In the first three weeks of January 2021, it lost close to 30% of its net worth.

56.     To bail out Melvin Capital Management, prominent hedge funds

---

[26] GameStop trading becomes so volatile that it is halted at least four times; its stock surges by 51 percent in a day and closes at a then-record. WSB users celebrate and vow more, with one user writing, "GUYS PLEASE HOLD< I GOT TO PAY OF MY STUDENT LOANNS."

Citadel and Point72 Asset Management extended a $2.75 billion lifeline to Melvin Capital Management.[27]

57.　Upon information and belief, Citadel affiliates account for nearly 40% of Robinhood's revenue.

### G.　Plaintiff's January 28, 2021 Robinhood Buying Experience

58.　Plaintiff entered into a contract with Robinhood for securities trading. **Exhibit A**. The contract did not authorize Robinhood to pick and choose which stocks Plaintiff can purchase without notice, the contract also did not authorize Robinhood to limit its users to only sell stocks they own, but not purchase more shares.  California law governs Robinhood's and Plaintiff's relationship under the contract.

59.　On January 28, 2021, Plaintiff placed a market order to buy 18.348623 shares of AMC stock and 4.190065 shares of BlackBerry Ltd ("BB") stock around 6:56 a.m. EST.

60.　On January 28, 2021, at 9:21 a.m. EST, Plaintiff received an e-mail message from Robinhood declaring that Robinhood was unilaterally cancelling his market order of $400.00 of AMC stock and $102.07 of Blackberry.

61.　Plaintiff never authorized Robinhood to cancel his order of BB and AMC stock.

---

[27] https://www.yahoo.com/now/hedge-fund-melvin-capital-closed-130501104.html

62.     Robinhood failed to provide notice to Plaintiff that it would cancel his orders of BB and AMC when he placed his market orders. Plaintiff would have taken advance of other opportunities with his money had he known Robinhood would cancel his market orders.

63.     Robinhood's cancelation of Plaintiff's BB and AMC market orders were part of Robinhood's knowing scheme to collude and enter into agreements with John Doe Defendants to manipulate the price of 13 stocks, including BB, AMC, American Airlines, Express, Naked Brand Group, Tootsie, Castor, Trivago, Sundial, Nokia, Bed Bath & Beyond, and Koss, by limiting Robinhood's users to only be able to sell those stocks, but not buy them. While its customers were limited to only selling those 13 companies' stocks, John Doe Defendants and other hedge funds were able to buy and sell during this prime buying opportunities.

64.     Robinhood misrepresented to Plaintiff and its customers the reason for why those 13 companies' stocks were not available for purchase. Robinhood blamed it on volatility, however Bitcoin and Tesla have experienced unprecedented growth recently and Robinhood never took the unprecedented move of restricting users from buying shares, only permitting them to sell. Thus, it was unfair and deceptive for Robinhood to (a) unilaterally cancel Plaintiff's orders, (b) limit Robinhood customers to only be able to sell their shares, and not buy more shares, (c) not permit Robinhood customers to purchase shares of 13 companies' stocks at all.

65.     Robinhood's actions, misrepresentations, and agreements on or around January 28, 2021 were intended to benefit its relationship with John Doe Defendants 1-10, at the expense of Plaintiff and Class members.

66.     Robinhood Defendants and John Doe Defendants, directly or indirectly, by use of the means or instrumentalities of interstate commerce or the facilities of a national securities exchange or the mail, effected, alone or with one or more other persons, a series of transactions in securities creating actual or apparent active trading in such securities, or raising or depressing the prices of such securities, for the purpose of inducing the purchase or sale of such securities by others, including but not limited to, the Defendants' acts of engaging in securities transactions that affected the volume and prices of certain securities for the purpose of inducing the purchase or sale of such securities by others. Specifically, Robinhood unilaterally canceled its customers' orders of 13 companies' stocks, prohibited Robinhood customers' from purchasing 13 companies' shares, limiting Robinhood customers to only sell those 13 companies' shares to benefit the short sale positions of John Doe Defendants.

67.     By limiting Plaintiff's purchase opportunity of AMC and BB, as part of the 13 manipulated company stocks, Robinhood violated established public policy intended to regulate financial services to consumers, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiffs and

the Class that outweigh any purported benefit. While other stocks in 2020 and 2021 had experienced volatility similar, if not exceeding, the volatility that the 13 companies' stocks that Robinhood prohibited for sale (for example Tesla), Robinhood chose to limit the ability to purchase these stocks because of John Does' short sale interests in these 13 companies' stocks. The utility of Robinhood's conduct in failing to maintain and implement adequate infrastructure and by breaching its duties and obligations to Plaintiffs and Class members is far outweighed by the gravity of harm to consumers who have now incurred losses and damages they would not have otherwise had Robinhood not decided to collude with John Doe Defendants and prevent Plaintiff and Class members from purchasing stocks.

68.   By restricting Plaintiff's and Class members' purchase ability of BB and AMC (part of the 13 companies Robinhood knowingly selected to prohibit purchasing) Robinhood failed to perform under the contracts entirely, and by, among other things, manipulating the stock price of certain stocks by limiting Plaintiff's and Class members' ability to purchase stocks and options; maintain a reliably functioning electronic trading platform with sufficient operating capability and adequate infrastructure to process customer transactions, including during volatile and high-volume trading sessions; by failing to adequately design, test, and monitor its infrastructure necessary to timely process customers' transactions; by failing to

provide timely access to trading services for certain securities such as GameStop, AMC, and American Airlines on January 28, 2021; by failing to timely process securities trades, including taking orders, entering orders, and executing orders; by failing to keep records of trades (including attempted trades); by failing to provide timely access to customers' accounts, securities and funds; by failing to have a supervisory control system that would have identified and prevented limiting customers' ability to buy and/or sell stocks, by failing to have adequate business contingency and continuity plans to ensure timely service in the event of high short sold stocks having investors purchase large amounts of it; by failing to have any backup plans to receive and process customers' orders during high volume trading sessions; by having no adequate means for customers to get assistance when they were not able to access their account and/or buy and sell securities; by failing to comply with applicable legal regulatory requirements and industry standards of care, including those set by FINRA and its predecessor authorities; and by making unauthorized transactions on customers' accounts.

69. Additionally, Robinhood and John Doe Defendants, directly or indirectly, alone or in concert with others, acting intentionally, knowingly or recklessly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or the facilities of a national securities exchange or the mail: (a) employed devices, schemes, or artifices to defraud Plaintiff

and Class members, and (b) engaged in acts, practices, or courses of business which operated or would operate as fraud or deceit upon Plaintiff and Class members by unilaterally canceling its customers' orders of 13 companies' stocks, prohibiting Robinhood customers from purchasing 13 companies' shares, limiting Robinhood customers to only sell those 13 companies' shares to benefit the short sale positions of John Doe Defendants.

70.     As a provider of financial services and registered securities investment broker-dealer, Robinhood had a fiduciary duty to exercise reasonable care, skill, and ability in conducting and facilitating financial services and transactions for its customers. As a broker-dealer, Robinhood provides securities trading services by taking, entering, and executing orders, provides information and advice to customers on investments and investment strategies (although it disclaims doing so), and even executes transactions within their accounts when not specifically requested by investors.

71.     Robinhood breached its fiduciary duties to Plaintiff and Class members by, among other things, failing to maintain a reliably functioning electronic trading platform with sufficient operating capability and adequate infrastructure to process customer transactions, including during volatile and high-volume trading sessions; by limiting its customers' ability to buy and sell certain securities that Robinhood purposefully singled out, by failing to adequately design, test, and monitor its

infrastructure necessary to timely process customers' transactions; by failing to timely process securities trades, including taking orders, entering orders, and executing orders; by failing to keep records of trades (including attempted trades); by failing to provide timely access to customers' accounts, securities and funds; by failing to have adequate business contingency and continuity plans to ensure timely service in the event of high volume trading; by failing to comply with applicable legal regulatory requirements and industry standards of care, including those set by FINRA and its predecessor authorities; and by making unauthorized transactions on customers' accounts.

72.     As a provider of financial services and registered securities investment broker-dealer, Robinhood had a fiduciary duty to exercise reasonable care, skill, and ability in conducting and facilitating financial services and transactions for its customers. Its actions failed its duty owed to its customers.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this class action on behalf of himself and all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The proposed class (the "Class") is defined as follows:

All Robinhood customers within the United States.[28]

---

[28] The "Class Period" for each claim is provisionally intended to be the respective statute of limitations for each claim, with Plaintiff reserving the right to invoke the equitable tolling doctrine based on the discovery rule or other bases as discovery and the case progresses

74.    Additionally, or in the alternative, Plaintiffs may also bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Subclass:

All Robinhood customers within the United States who had market orders cancelled by Robinhood for the following 13 companies: GameStop, American Airlines, BlackBerry, Bed Bath & Beyond, Nokia, Koss, AMC, Sundial, Trivago, Castor, Naked Brand Group, Tootsie.

75.    Expressly excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest, or which has a controlling interest in Defendants, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

76.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

## Numerosity and Ascertainability

77.    The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. Based on information

and belief and publicly available reports, Class members number in the hundreds of thousands and likely are many million. Subclass members are likely in the tens or hundreds of thousands. All Class members may be notified of the pendency of this action by reference to Robinhood's records, publication notice, or by other alternative means.

### Commonality

78. Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class. These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to the following:

> (a) Why Robinhood restricted trading for only 13 companies' stocks;
>
> (b) Whether Robinhood complied with its legal, regulatory, and licensing requirements;
>
> (c) Whether Robinhood's conduct is governed by California law;
>
> (d) Whether Robinhood and John Doe Defendants violated Federal antitrust laws;
>
> (e) Whether Robinhood and John Doe Defendants violated Federal securities laws;

(f)     Whether Robinhood breached its contract with its customers;

(g)     Whether Robinhood's conduct was negligent;

(h)     Whether Robinhood breached its fiduciary duties to Plaintiff and Class members;

(i)     Whether Robinhood breached (and continues to breach) its contracts with Robinhood customers and/or the implied covenant of good faith and fair dealing;

(j)     Whether Robinhood's conduct violates California Unfair Competition Law, Bus. & Prof. Code Section 17200, et seq.;

(k)     Whether Plaintiff and Class members were injured by Robinhood's conduct, and if so, the appropriate measure of damages.

(l)     Whether Plaintiff and Class members are entitled to injunctive relief.

### **Typicality**

79.     Plaintiff's claims are typical of the claims of the other members of the Class. Robinhood Defendants' and John Doe Defendants' conduct has caused Plaintiff and members of the Class to sustain the same or substantially similar injuries and damages. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff and all members of the Class have sustained

economic injury, including ascertainable loss and injury in fact, arising out of Robinhood Defendants' and John Doe Defendants' violations of law as alleged herein.

## Adequate Representation

80.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff is a member of the Class and does not have any conflict of interest with other Class members. Plaintiff has retained and is represented by competent counsel who are experienced in complex class action litigation, and consumer class actions such as the present action.

81.    Plaintiff and his counsel are committed to vigorously prosecuting the action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have interests adverse to those of the Class.

## Predominance and Superiority

82.    The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons which is superior to the alternative methods involved in individual litigation:

(a)    The Class is so numerous as to make joinder impracticable. However, the Class is not so numerous as to create manageability problems. There are no unusual legal or factual issues that would create manageability problems.

Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Robinhood Defendants and John Doe Defendants when confronted with incompatible standards of conduct;

(b)     Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

(c)     Despite the costly nature of the repair costs suffered by Plaintiff and Class members, the claims of the individual Class members are, nevertheless, small in relation to the expenses of individual litigation, making a Class action the only procedural method of redress in which Class members can, as a practical matter, recover.

## FIRST CAUSE OF ACTION

### VIOLATION FO THE SHERMAN ACT
### 15 U.S.C. § 1
### Against All Defendants

83.     Plaintiff repeats and re-allege each and every allegation in paragraphs 1 to 82 above, as if set forth herein in full.

84.     In violation of Section 1 of the Sherman Antitrust Act, Defendants and John Doe Co-conspirators agreed to manipulate Robinhood's customers' ability to

buy and sell securities on January 28, 2021.

85.    These anticompetitive agreements have an open and obvious adverse effect on competition. They ensured that hedge funds faced no competition in the price of certain stocks and permitted John Doe hedge funds to recoup monies lost from Robinhood customer's purchasing stocks that John Doe hedge funds had large short sale positions in. By preventing Robinhood's customers to purchase the stocks on January 28, 2020, but only permitting them to sell, while John Doe hedge funds were permitted to buy and sell the entire time, Defendants decreased the market price of GameStop, AMC, American Airlines, NOK, and other stocks.

86.    Defendants and their Co-conspirators' anticompetitive agreements have actual detrimental effects, i.e., less competitive stock prices and unfair playing field between individual investors and institutional funds.

87.    An observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets.

88.    Defendants and their Co-conspirators did not act unilaterally or independently, or in their own economic interests, when entering into these agreements, which substantially, unreasonably, and unduly restrain trade in the relevant market, and harmed Plaintiff and the Class thereby.

89.    There is no legitimate, pro-competitive business justification for

Defendants' anticompetitive agreements or any justification that outweighs their harmful effect. Even if there were some conceivable justification, the agreements are broader than necessary to achieve such a purpose.

90.     Plaintiff and Class members have been injured and will continue to be injured in their businesses and property by not being able to recoup losses incurred by the Agreements and cannot purchase stock or short positions at the price that was available on January 28, 2020 when buying was restricted. Plaintiffs and the Class are entitled to an injunction that terminates the ongoing violations alleged in this Complaint and to recover three times the amount of their overcharge damages directly caused by Defendant's unreasonable restraint of trade.

## SECOND CAUSE OF ACTION

**FRAUD IN CONNECTION WITH THE PURCHASE OR
SALE OF SECURITIES
Violation of Section 10(b) of the Exchange Act and
Rule 10b-5(a) and (c) thereunder
Against All Defendants**

91.     Plaintiff repeats and re-allege each and every allegation in paragraphs 1 to 82 above, as if set forth herein in full.

92.     By reasons of the conduct described above, the Defendants, directly or indirectly, alone or in concert with others, acting intentionally, knowingly or recklessly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or the facilities of a national securities

exchange or the mail: (a) employed devices, schemes, or artifices to defraud Plaintiff and Class members, and (b) engaged in acts, practices, or courses of business which operated or would operate as fraud or deceit upon Plaintiff and Class members.

93. The Defendants acted knowingly or recklessly.

94. By reason of the foregoing, the Defendants violated and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

95. Accordingly, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], the Defendants are liable for each others' violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

96. As a proximate and direct result of Defendants' violations of the Exchange Act and Rule 10b-5, Plaintiff and Class members suffered actual damages.

97. Plaintiff and Class members seek attorney fees and costs.

### THIRD CAUSE OF ACTION

**FRAUD IN THE OFFER OR SALE OF SECURITIES**
**Violation of Securities Act Section 17(a)(1) and (3)**
**Against All Defendants**

98. Plaintiff repeats and re-allege each and every allegation in paragraphs 1 to 82 above, as if set forth herein in full.

99. By engaging in the conduct described above, the Defendants, in the

offer or sale of securities, acting with the requisite degree of scienter, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly, alone or in concert with others: (a) knowingly or recklessly, employed devices, schemes or artifices to defraud; and (b) with negligence, engaged in transactions, practices or courses of business which operated or would have operated as a fraud or deceit upon purchasers.

100. The Defendants acted knowingly, recklessly, or negligently.

101. By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

102. By reason of the conduct described above, the Defendants, acting knowingly or recklessly, provided substantial assistance to, and thereby aided and abetted, each other's violations of Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

103. Accordingly, pursuant to Section 15(b) of the Securities Act [15 U.S.C. § 77o(b)], the Defendants are liable for each other's violations of Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

104. As a proximate and direct result of Defendants' violations of Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], Plaintiff and Class members suffered actual damages.

105. Plaintiff and Class members seek attorney fees and costs.

## FOURTH CAUSE OF ACTION

**MARKET MANIPULATION**
**Violation of Exchange Act Section 9(a)(2)**
**Against All Defendants**

106. Plaintiff repeats and re-allege each and every allegation in paragraphs 1 to 82 above, as if set forth herein in full.

107. By engaging in the conduct described above, the Defendants, directly or indirectly, by use of the means or instrumentalities of interstate commerce or the facilities of a national securities exchange or the mail, effected, alone or with one or more other persons, a series of transactions in securities creating actual or apparent active trading in such securities, or raising or depressing the prices of such securities, for the purpose of inducing the purchase or sale of such securities by others, including but not limited to, the Defendants' acts of engaging in securities transactions that affected the volume and prices of certain securities for the purpose of inducing the purchase or sale of such securities by others.

108. The Defendants acted with the intent to induce trading by others.

109. By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Section 9(a)(2) of the Exchange Act [15 U.S.C. §78i(a)(2)].

110. By reason of the conduct described above, the Defendants, acting

knowingly or recklessly, provided substantial assistance to, and thereby aided and abetted, each other's violations of Section 9(a)(2) of the Exchange Act [15 U.S.C. §78i(a)(2)].

111.   Accordingly, pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], the Defendants are liable for each other's violations of Section 9(a)(2) of the Exchange Act [15 U.S.C. §78i(a)(2)].

112.   As proximate and direct result of Defendants' violations of Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], Plaintiff and Class members suffered actual damages.

113.   Plaintiff and Class members seek attorney fees and costs.

## <u>FIFTH CAUSE OF ACTION</u>

### Breach of Contract
### Against solely Defendants Robinhood Financial and Robinhood Securities

114.   Plaintiff repeats and re-allege each and every allegation in paragraphs 1 to 82 above, as if set forth herein in full.

115.   In order to use the Robinhood trading platform, a potential customer must enter into the Customer Agreement with Robinhood. The operative Customer Agreement at the time of the Robinhood's breach is attached as **Exhibit A**. The Agreement mandates that Robinhood's accounts and trading activities will be subject to all applicable state and federal laws and regulations, including those set by self-regulatory organizations. *See id*. Each Customer Agreement also selects

34

California choice of law to apply. *Id.* Each of these standardized agreements are contracts of adhesion that are imposed on Robinhood's customers as conditions of use and are not subject to negotiation.

116. Robinhood furnished consideration to Plaintiff and Class members in the form of access to Robinhood's online trading platform, enabling them to trade securities and options listed on U.S. securities exchanges. In exchange, Robinhood received consideration from Plaintiff and Class members including, but not limited to, order flow data, which it sold to market makers to generate revenue, interest generated on cash balances in accounts, commissions and fees based on trades placed, interest on margin extensions, and fees for Gold Membership access.

117. Robinhood breached its contracts with customers by failing to perform under the contracts entirely, and by, among other things, manipulating the stock price of certain stocks by limiting Plaintiff's and Class members' ability to purchase stocks and options; maintain a reliably functioning electronic trading platform with sufficient operating capability and adequate infrastructure to process customer transactions, including during volatile and high-volume trading sessions; by failing to adequately design, test, and monitor its infrastructure necessary to timely process customers' transactions; by failing to provide timely access to trading services for certain securities such as GameStop, AMC, and American Airlines on January 28, 2021; by failing to timely process securities trades, including taking orders, entering

orders, and executing orders; by failing to keep records of trades (including attempted trades); by failing to provide timely access to customers' accounts, securities and funds; by failing to have a supervisory control system that would have identified and prevented limiting customers' ability to buy and/or sell stocks, by failing to have adequate business contingency and continuity plans to ensure timely service in the event of high short sold stocks having investors purchase large amounts of it; by failing to have any backup plans to receive and process customers' orders during high volume trading sessions; by having no adequate means for customers to get assistance when they were not able to access their account and/or buy and sell securities; by failing to comply with applicable legal regulatory requirements and industry standards of care, including those set by FINRA and its predecessor authorities; and by making unauthorized transactions on customers' accounts.

118.   Robinhood's failure to perform and its breaches of the Customer Agreement and applicable contracts resulted in damages and losses to Plaintiff and Class members and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial.

119.   Additionally, because damages may not be a full and complete remedy due to the ongoing nature of the relationship between the parties and the continuing

risk of future harm, Plaintiff and Class members seek specific performance of the contracts to ensure Robinhood has sufficient infrastructure to manage their accounts and trading activity in the future.

## SIXTH CAUSE OF ACTION

### Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### Against All Defendants

120.   Plaintiff repeats and re-allege each and every allegation in paragraphs 1 to 82 above, as if set forth herein in full.

121.   Robinhood has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, et seq., because Robinhood's conduct is unlawful and unfair as herein alleged.

122.   Plaintiff, the members of the Class, and Robinhood are a "person" or "persons," within the meaning of Section 17201 of the California Unfair Competition Law ("UCL").

123.   The UCL prohibits any unlawful and unfair business practices or acts. Robinhood's conduct, as alleged herein, constitutes an unlawful and unfair business practice that occurred in connection with the provision of its financial and investment broker services.

124.   **Unlawful prong:**  Robinhood's conduct, as described within, violated the UCL's unlawful prong because it: (1) violated federal securities laws (2)

constitutes a breach of contract, and (3) advanced anticompetitive agendas that manipulated and limited consumers ability to buy and sell their securities.

125.   **Unfair prong:**  Robinhood's conduct, as described within, violated the UCL's unfair prong because its conduct violates established public policy intended to regulate financial services to consumers, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the Plaintiff and the Class that outweigh any purported benefit. The utility of Robinhood's conduct in failing to maintain and implement adequate infrastructure and by breaching its duties and obligations to Plaintiff and Class members is far outweighed by the gravity of harm to consumers who have now incurred losses and damages they would not have otherwise.

126.   Plaintiff and Class members possess standing to pursue this claim because Plaintiff has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

127.   The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint. See Cal. Bus. & Prof. Code § 17205.

128.   As a direct and proximate cause of Robinhood's conduct, which constitutes unlawful and unfair business practices, as herein alleged, Plaintiffs and

Class members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity. Additionally, because Plaintiff and Class members continue to have accounts and investments with Robinhood and intend to use Robinhood's services in the future, injunctive relief is warranted.

## SEVENTH CAUSE OF ACTION

### Negligence
### Against All Defendants

129.   Plaintiff repeats and re-allege each and every allegation in paragraphs 1 to 82 above, as if set forth herein in full.

130.   As a provider of financial services and registered securities investment broker-dealer, Robinhood had a duty to exercise reasonable care, skill, and ability in conducting and facilitating financial services and transactions for its customers.

131.   Robinhood unlawfully breached its duties by, among other things, failing to maintain a reliably functioning electronic trading platform with sufficient operating capability and adequate infrastructure to process customer transactions, including during volatile and high-volume trading sessions; by limiting its customers' ability to buy and sell certain securities that Robinhood purposefully singled out, by failing to adequately design, test, and monitor its infrastructure

necessary to timely process customers' transactions; by failing to timely process securities trades, including taking orders, entering orders, and executing orders; by failing to keep records of trades (including attempted trades); by failing to provide timely access to customers' accounts, securities and funds; by failing to have adequate business contingency and continuity plans to ensure timely service in the event of high volume trading; by failing to comply with applicable legal regulatory requirements and industry standards of care, including those set by FINRA and its predecessor authorities; and by making unauthorized transactions on customers' accounts.

132. As set forth below, Robinhood's conduct was so want of even scant care that its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct, rendering Robinhood not just negligent, but grossly negligent.

133. Robinhood's negligence and breaches of its duties owed to Plaintiff and Class members proximately caused losses and damages that would not have occurred but for Robinhood's breach of its duty of due care. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial.

## EIGTH CAUSE OF ACTION

### Negligence
### Against All Defendants

134. Plaintiff repeats and re-allege each and every allegation in paragraphs

40

1 to 82 above, as if set forth herein in full.

135. As a provider of financial services and a registered securities investment broker-dealer, at all times relevant herein Robinhood was a fiduciary to Plaintiff and Class members and owed them the highest good faith and integrity in performing its financial services and acting as a securities broker-dealer on their behalf. As a broker-dealer, Robinhood provides securities trading services by taking, entering, and executing orders, provides information and advice to customers on investments and investment strategies (although it disclaims doing so), and even executes transactions within their accounts when not specifically requested by investors.

136. Robinhood breached its fiduciary duties to Plaintiff and Class members by, among other things, failing to maintain a reliably functioning electronic trading platform with sufficient operating capability and adequate infrastructure to process customer transactions, including during volatile and high-volume trading sessions; by limiting its customers' ability to buy and sell certain securities that Robinhood purposefully singled out, by failing to adequately design, test, and monitor its infrastructure necessary to timely process customers' transactions; by failing to timely process securities trades, including taking orders, entering orders, and executing orders; by failing to keep records of trades (including attempted trades); by failing to provide timely access to customers' accounts, securities and funds; by

failing to have adequate business contingency and continuity plans to ensure timely service in the event of high volume trading; by failing to comply with applicable legal regulatory requirements and industry standards of care, including those set by FINRA and its predecessor authorities; and by making unauthorized transactions on customers' accounts.

137.   Robinhood's conduct has caused Plaintiff and Class members harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class and Subclass members pray for judgment against Robinhood Defendants and John Doe Defendants' as follows:

A.     That the Court determine that this action may be litigated as a class action and that Plaintiff and his counsel be appointed class representative and class counsel, respectively;

B.     That the Court enter judgment against Defendants and in favor of Plaintiff and the class on all counts;

C.     That Defendants be required by this Court's Order to compensate all members of the Class for their damages and injuries, as well as to

compensate Plaintiff's counsel for their attorneys' fees and costs of suit, and that Defendants be ordered to bear the cost of notice to the absent Class members, as well as the administration of this common fund;

D.    That damages and/or restitution or disgorgement be awarded to Plaintiff and each Class member according to proof;

E.    That the Court award injunctive and declaratory relief as pled or as the Court may deem proper;

F.    That the Court award interest as allowable by law;

G.    That the Court award reasonable attorneys' fees as provided by applicable law;

H.    That the Court award all costs of suit; and

I.    That Plaintiff and the Class members be awarded all such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted this 29th day of January, 2021.

**VARNELL & WARWICK, P.A.**

BY:/S/ **JANET R. VARNELL**
Janet R. Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
Matthew T. Peterson, FBN: 1020720
Erika Willis, FBN: 100021
1101 E. Cumberland Ave., Suite 201H, #105
Tampa, Florida 33602

Telephone: (352) 753-8600
Facsimile:  (352) 504-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com
mpeterson@varnellandwarwick.com
ewillis@varnellandwarwick.com
kstroly@varnellandwarwick.com

*Attorneys for Plaintiff and the Class*